FILED
2025 Feb-12  PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

Pro Se General Complaint for a Civil Case (Rev.10/16)

# United States District Court
## for the
## NORTHERN DISTRICT OF ALABAMA

FILED

2025 FEB 12  A 11: 19

U.S. DISTRICT COURT
N.D. OF ALABAMA

<u>Brandon Adams</u>

*Plaintiff*

*(Write your full name. No more than one plaintiff may be named in a pro se complaint)*

**v.**

Clifton Cislak, Brian L. Schwalb, Angela D. Caesar, Shig Yasunaga, Sofi, Etrade

*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all defendants cannot fit in the space above or on page 2, please write "see attached" in the space and attach an additional page with the full list of names)*

Case No.: 2:25 cv 233 - NAD
(to be filled in by the Clerk's Office)

JURY TRIAL ☒ Yes   ☐ No

## COMPLAINT FOR A CIVIL CASE

### I.   The Parties to This Complaint

**A.   The Plaintiff**

| | |
|---|---|
| Name | Brandon Adams |
| Street Address | 2701 North Rainbow Blvd #2095 |
| City and County | Las Vegas Clark |
| State and Zip Code | Nevada 89108 |
| Telephone Number | 725-248-1937 |

**B.   The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization or a corporation. If you are suing an individual in his/her official capacity, include the person's job or title. Attach additional pages if needed.

Page 1 of 7

Pro Se General Complaint for a Civil Case (Rev.10/16)

Defendant No. 1
> Name                Clifton Cislak
>
> Job or Title        Clerk
>
> Street Address      333 Constitution Ave NW
>
> City and County     Washington
>
> State and Zip Code  DC 20001

Defendant No. 2
> Name                Brian L. Schwalb
>
> Job or Title        Attorney General
>
> Street Address      400 6th Street NW
>
> City and County     Washington
>
> State and Zip Code  DC 20001

Defendant No. 3
> Name                Sofi
>
> Job or Title
>
> Street Address      234 1st Street
>
> City and County     San Francisco
>
> State and Zip Code  CA 94105

Defendant No. 4
> Name                Etrade
>
> Job or Title
>
> Street Address      671 North Glebe Road Ballston Tower
>
> City and County     Arlington
>
> State and Zip Code  VA  22203

Pro Se General Complaint for a Civil Case (Rev.10/16)

Defendant No. 5

| | |
|---|---|
| Name | Shig Yasunaga |
| Job or Title | Clerk of Court |
| Street Address | 151 U.S. Courthouse 600 E. Monroe Street |
| City and County | Springfield |
| State and Zip Code | IL 62701 |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only these types of cases can be heard in federal court: a dispute that involves a right in the United States Constitution or a federal law (as opposed to a state law or local ordinance); a dispute that involves the United States of America (or any of its agencies, officers or employees in their official capacities) as a party; and a dispute between citizens of different states with an amount in controversy that is more than $75,000.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Constitutional or Federal Question   ☐ USA Defendant   ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction is USA defendant

The Defendant(s)

Name of Agency _____

Address _____

### B.    If the Basis for Jurisdiction is a Constitutional or Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Seventh, Fourteenth Amendment Article VI  Article VI  Supreme Law Clause 2 Supremacy Clause

Rule 25. Filing and Service, Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962) Simmons v. Abruzzo, 49 F.3d 83 (2d Cir. 1995)

Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983) 28 U.S. Code § 1691 - Seal and teste of process

## C.   If the Basis for Jurisdiction is Diversity of Citizenship

1.   The Plaintiff

The plaintiff, *(name)*_____, is a citizen of the State of *(name)*_____.

2.   The Defendant(s)

a.   If the defendant is an individual

The defendant, *(name)*_____, is a citizen of the State of *(name)*_____. Or is a citizen of *(foreign nation)* _____.

b.   If the defendant is a corporation

The defendant, *(name)*_____, is incorporated under the laws of the State of *(name)*_____, and has its principal place of business in the State of *(name)*_____.

Or   is   incorporated   under   the   laws   of   *(foreign   nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy – the amount the plaintiff claims the defendant owes or the amount that is at state – is more than $75,000, not counting interest and costs of court, because: *(explain)*

_____

_____

_____

## III.   Statement of Claim

Pro Se General Complaint for a Civil Case (Rev.10/16)

Write a short and plain statement of the claim. Briefly state the facts showing that the plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Violation of Due Process and Fourteenth Amendment ignoring U.S. Department of Justice Civil Rights Division

Office for Access to Justice March 14, 2016 &U.S. Department of Justice Office of the Associate Attorney General April 20, 2023

taking my money and not filing Writ of Quo Warranto and Writ of Mandamus

because all are receiving 42 U.S. Code § 658a - Incentive payments to States

Violating Separation of Powers and U.S. Constitution and Federal Laws

Clerks and Attorney General leaving Color of Law Forms off record

and not documenting documents and concealing documents filed

18 U.S. Code § 2071 - Concealment, removal, or mutilation generally

18 U.S. Code § 1001 - Statements or entries generally

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks for the court to order. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive (punishment) or exemplary (warning or deterrent) damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Grant relief in demand letters and Writ of Quo Warranto file and seal Writ of Quo

Warranto

## V.   Certification and Closing

Under Rule 11 of the Federal Rules of Civil Procedure, by signing below, I certify to the best of my knowledge, information, and belief that this complaint; (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

First Name Brandon                    Last Name Adams

Mailing Address 2701 North Rainbow Blvd #2095

City and State Las Vegas Nevada                    Zip Code 89108

Telephone Number 725-248-1937

E-mail Address

Signature of plaintiff _Brandon Adams_

Date signed 2/6/2025

**OPTIONAL**

You may request to receive electronic notifications. You <u>may not</u> file documents or communicate with the court electronically. All documents must be submitted in <u>paper</u> and you must serve the defendants.

Type of personal computer and related software/equipment required:

- Personal computer running a standard platform such as Windows or Mac OSX
- Internet access (high speed is recommended)
- A Web browser (Microsoft Internet Explorer 7.0 or 6.0 or Mozilla Firefox 2 or 1.5)
- Adobe Acrobat Reader is needed for viewing e-filed documents
- PACER account – Information and registration at www.pacer.gov

- You will receive one "free" look of the document. Documents must be viewed within 14 days. You must only single-click on the hyperlink to view.

**Note: You must promptly notice the Clerk's Office, in writing, if there is a change in your designated e-mail address. Failure to update your email address does <u>not</u> excuse failures to appear or timely respond.**

E-mail type:

☒ HTML – Recommended for most e-mail clients

□ Plain Text – Recommended for e-mail accounts unable to process HTML e-mail

Conditioned upon the sufficiency of your electronic equipment which the court will test and verify receipt, you will be allowed to receive electronic notifications.

By submitting this request , the undersigned consents to electronic service and waives the right to personal service and service by first class mail pursuant to Rule 5(b)(2) of the Federal Rules of Civil Procedure, except with regard to service of a summons and complaint.

When a filing is entered on the case docket, a party who is registered for electronic noticing will receive a Notice of Electronic Filing in his/her designated e-mail account. The Notice will allow one free look at the document, and any attached .pdf may be printed or saved.

IMPORTANT:

Messages sent to Yahoo or AOL accounts are frequently found in the spam folder until the court is added to your address book.

E-mail address designated for noticing:

badams1273@yahoo.com

Participant signature: _Brandon Adams_ Brandon Adams

Date: 2/6/2025

Brandon Adams

2701 North Rainbow Blvd #2095 Las Vegas NV 89108

Email: badams1273@yahoo.com

27th day of January, 2025

Etrade Securities, LLC

P.O. Box 484 Jersey City NJ 07303-0484

Dear Sir/Madam,

You were to have paid the amount of $5,000.00 USD (the "Debt") to me on January 27, 2025, and this Debt remains outstanding despite my requests for payment. The Debt relates to:

Violation of Due Process and Fourteenth Amendment and No Personal Jurisdiction giving New Jersey Child Support my ROTH IRA of $984.72 on January 23,2020

I am demanding $5,000 paid for the amount taken and the damages and interest I would have earned over the years.

For your reference I have enclosed a copy of u.S. Department of Justice

Civil Rights Division

Office for Access to Justice Letter March 14,2016

Case 2:20-cv-02112-RFB-BNW Document 3 Filed 11/17/20 Page 1 of 9

U.S. Department of Justice

Office of the Associate Attorney General Letter April 20, 2023

Fourteenth Amendment

Section 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Article VI  Supreme Law

Clause 2 Supremacy Clause

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

sent via email Jan 27,2025 to service@etrade.com

Account Number: 5909-1596

Account Type: ROTH IRA letter from Etrade.

I hereby demand that payment of the full amount of the Debt be paid to me within 1 day from the date of this letter at the following address: 2701 North Rainbow Blvd #2095 Las Vegas NV 89108.

Please note that if I have to commence legal proceedings in order to secure repayment of the debt owing, this letter will be tendered in court as evidence of your failure to attempt to resolve this matter. Further, you may be liable for any court costs, attorney fees and damages, including punitive damages.

You might want to contact a lawyer to discuss your legal rights and responsibilities.

Yours sincerely,

Brandon Adams

Brandon Adams

Enclosure

©2002-2025 LawDepot.com®

Brandon Adams
2701 N Rainbow Blvd #2095, Las Vegas, NV 89108, USA
Email: badams1273@yahoo.com

27th day of January, 2025

Sofi
234 1st St, San Francisco, CA 94105, USA
Attn: Cami Hall

Dear Sir/Madam,

You were to have paid the amount of $5,000.00 USD (the "Debt") to me on January 27, 2025, and this Debt remains outstanding despite my requests for payment. The Debt relates to:

Violation of Due Process Fourteenth Amendment No Personal Jurisdiction Garnishment New Jersey Child Support by Sofi.

For your reference I have enclosed a copy of cami Hall reference letter 14562639 April 8, 2020

Email was sent on January 27,2025 demanding money be returned and I am asking for $5,000 for the interest would have been earned on the money and violation of due process in damages. She was sent letter stamped by SCOTUS Jan 8,2025

U.S. Department of Justice
Civil Rights Division
Office for Access to Justice Letter March 14,2016

Case 2:20-cv-02112-RFB-BNW Document 3 Filed 11/17/20 Page 1 of 9

U.S. Department of Justice
Office of the Associate Attorney General Letter April 20, 2023

Along with the violations in email

Fourteenth Amendment

Page 1 of 2

Section 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Article VI  Supreme Law
Clause 2 Supremacy Clause
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

I hereby demand that payment of the full amount of the Debt be paid to me within 1 day from the date of this letter at the following address: 2701 North Rainbow Blvd #2095 Las Vegas, NV 89108.

Please note that if I have to commence legal proceedings in order to secure repayment of the debt owing, this letter will be tendered in court as evidence of your failure to attempt to resolve this matter. Further, you may be liable for any court costs, attorney fees and damages, including punitive damages.

You might want to contact a lawyer to discuss your legal rights and responsibilities.

Yours sincerely,

*Brandon Adams*

Brandon Adams

Enclosure

©2002-2025 LawDepot.com®

Case 2:25-cv-00233-AMM   Document 1   Filed 02/12/25   Page 12 of 41

1/29/25, 11:35 AM          Yahoo Mail - USPS Chief Judge Sri Srinivasan & Clifton Cislak Writ of Quo Warranto COL Forms USPS Jan 24 2025 Chief Justice...

## USPS Chief Judge Sri Srinivasan & Clifton Cislak Writ of Quo Warranto COL Forms USPS Jan 24 2025 Chief Justice John Roberts

From:   Brandon Adams (badams1273@yahoo.com)

To:     badams1273@yahoo.com

Date:   Wednesday, January 29, 2025 at 11:34 AM PST

BRANDON ADAMS
2701 N RAINBOW BLVD
# 2095
LAS VEGAS NV 89108

$2.04          US POSTAGE
FIRST – CLASS IMI
Jan 29 2025
Mailed from ZIP 89108
3 OZ FIRST – CLASS MAIL FLATS RATE
ZONE 8

10582122

063S0010282493

The U.S. District Court of Appeals for DC Cir.
Chief Judge Sri Srinivasan
333 CONSTITUTION AVE NW
WASHINGTON DC 20001–2004

Shipped using PostalMate®
Pkg:76078

Sent from Yahoo Mail

# (No Subject)

From: Brandon Adams (badams1273@yahoo.com)

To:    badams1273@yahoo.com

Date: Friday, January 10, 2025 at 03:01 PM PST

Article VI  Supreme Law
Clause 2 Supremacy Clause



BRANDON ADAMS
2701 N RAINBOW BLVD
# 2095
LAS VEGAS NV 89108

$1.25      US POSTAGE
$2.34      US POSTAGE
FIRST — CLASS MAIL
Jan 10 2025
Mailed from ZIP 89108
3 OZ FIRST — CLASS MAIL FLATS RATE
ZONE 8

18582122

063S0011718298

Rule 25. Filing and Service (a) Filing.
(1) Filing with the Clerk. (2) Filing: Method and Timeliness.
mailed to the clerk by first-class mail, or other class of mail that is at least as expeditious, postage prepaid; or

(4) Clerk's Refusal of Documents. The clerk must not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or by any local rule or practice.

(d) Proof of Service.
(iii) their mail or electronic addresses, facsimile numbers, or the addresses of the places of delivery, as appropriate for the manner of service.

The U.S. District Court of Appeals for DC Cir.
Chief Judge Sri Srinivasan
333 CONSTITUTION AVE NW
WASHINGTON DC 20001 – 2804

Shipped using PostalMate®
Pkg:75468

28 U.S. Code § 1691 - Seal and teste of process

Sent from Yahoo Mail

Howlett v. Rose, 496 U.S. 356 (1990)

Rule 21. Writs of Mandamus and Prohibition, and Other Extraordinary Writs
Primary tabs
(a) Mandamus or Prohibition to a Court: Petition, Filing, Service, and Docketing.
(c) Other Extraordinary Writs.

Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983)

De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990)

1:24-cv-03566 ADAMS v. HARRIS et al Writ of Quo Warranto

## Etrade Demand Letter

From:  Brandon Adams (badams1273@yahoo.com)

To:      badams1273@yahoo.com

Date:   Monday, January 27, 2025 at 01:17 PM PST

**BRANDON ADAMS**
**2701 N RAINBOW BLVD**
**# 2095**
**LAS VEGAS NV 89108**

$0.69          US POSTAGE
FIRST – CLASS (M)
Jan 27 2025
Mailed from ZIP 89108
1 OZ FIRST – CLASS MAIL LETTER RATE

18542122

063S0011718299

**Etrade Securities LLC**
**PO BOX 484**
**JERSEY CITY NJ 07303 – 0484**

Sent from Yahoo Mail

## SOFI Demand Letter

From:  Brandon Adams (badams1273@yahoo.com)

To:     badams1273@yahoo.com

Date:   Monday, January 27, 2025 at 01:15 PM PST



File in case 3:23-cv-03332-CRL-KLM

| Form **COL** | **Violation Warning** **Denial of Rights Under Color of Law** |
|---|---|

▶ Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983

| Name and address of Citizen | Name and address of Notice Recipient |
|---|---|
| Brandon Adams 2701 North Rainbow Blvd #2095 Las Vegas, NV 89108 | Shig Yasunaga Clerk of Court 151 U.S. Courthouse 600 E. Monroe Street Springfield, IL 62701 |

Citizen's statement:

Complaint and Supreme Court of Illinois COL Forms served USPS Nov 14, 2023  18 U.S. Code § 2076 - Clerk of United States District Court,  18 U.S. Code § 2071 - Concealment, removal, or mutilation generally Article VI  Supreme Law Clause 2 Supremacy Clause, Biffle v. Morton Rubber Industries, Inc., 785 S.W.2d 143 (Tex. 1990), Owen v. City of Independence, 445 U.S. 622 (1980)18 U.S. Code § 1505 - Obstruction of proceedings before departments, agencies, and
committees ,18 U.S. Code § 1509 - Obstruction of court orders, Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983)

I certify that the forgoing information stated here is true and correct.
**Citizen's signature**

▶ *Brandon Adams* | Date ▶ | 11/21/2023

## Legal Notice and Warning

**Federal law provides that it is a crime to violate the Constitutional Rights of a citizen under the Color of Law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to **coerce** or **deceive** a citizen to surrender his **Constitutional Rights** is a **Federal Crime.**  Federal Courts have found that your ignorance of the law is no excuse.

**18 USC §242** provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or  may be sentenced to death.

**18 USC §245** provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both, and if death results or if such acts include  kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be subject to imprisonment for any term of years or for life or  may be sentenced to death.

**42 USC §1983** provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning,** you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages.  Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

**Notice of Service:**

I, _____certify that I personally delivered this notice to above named recipient

and address on _____at _____(am/pm).

Public Domain—Privacy Form COL(02)

| Form **COL** | **Violation Warning**<br>**Denial of Rights Under Color of Law** | ⟋ |
|---|---|---|

▶ Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983

| Name and address of Citizen | Name and address of Notice Recipient |
|---|---|
| Brandon Adams<br>2701 North Rainbow Blvd #2095<br>Las Vegas, NV 89108 | U.S. District Court District of Columbia<br>Angela D. Caesar Clerk of Court<br>333 Constitution Avenue, N.W. Room 1225<br>Washington, DC 20001 |

Citizen's statement

18 U.S. Code § 2071 - Concealment, removal, or mutilation generally ADAMS v. HARRIS et al   1:24-cv-03566 28 U.S. Code § 1691 - Seal and teste of process, Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983) Article VI  Supreme Law Clause 2 Supremacy Clause, Howlett v. Rose, 496 U.S. 356 (1990) Owen v. City of Independence, 445 U.S. 622 (1980)

I certify that the forgoing information stated here is true and correct.
**Citizen's signature**

▶    *Brandon Adams* | **Date** ▶ 12/26/2024

## Legal Notice and Warning

**Federal law provides that it is a crime to violate the Constitutional Rights of a citizen under the Color of Law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to **coerce** or **deceive** a citizen to surrender his **Constitutional Rights** is a **Federal Crime.** Federal Courts have found that your ignorance of the law is no excuse.

**18 USC §242** provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**18 USC §245** provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both, and if death results or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be subject to imprisonment for any term of years or for life or may be sentenced to death.

**42 USC §1983** provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning**, you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages. Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

**Notice of Service:**

I, _____certify that I personally delivered this notice to above named recipient

and address on _____ at _____(am/pm).

Public Domain—Privacy Form COL(02)

Form **COL**

# Violation Warning
## Denial of Rights Under Color of Law

▶ Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983

| Name and address of Citizen | Name and address of Notice Recipient |
|---|---|
| Brandon Adams<br>2701 North Rainbow Blvd #2095<br>Las Vegas, NV 89108 | Attorney General Brian L. Schwalb<br>400 6th Street, NW<br>Washington, DC 20001 |

Citizen's statement:

1:24-cv-03566 ADAMS v. HARRIS et al 18 U.S. Code § 2071 - Concealment, removal, or mutilation generally, First, Fifth, Seventh, & Fourteenth Amendment Article VI  Supreme Law Clause 2 Supremacy Clause,Newman v. United States ex Rel. Frizzell, 238 U.S. 537 (1915) 18 U.S. Code § 1505 - Obstruction of proceedings before departments, agencies, and committees, Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983) 18 U.S. Code § 1509 - Obstruction of court orders

I certify that the forgoing information stated here is true and correct.
**Citizen's signature**

▶    *Brandon Adams*                               | Date ▶ 01/03/2025

## Legal Notice and Warning

**Federal law provides that it is a crime to violate the Constitutional Rights of a citizen under the Color of Law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to **coerce** or **deceive** a citizen to surrender his **Constitutional Rights** is a **Federal Crime**. Federal Courts have found that your ignorance of the law is no excuse.

**18 USC §242** provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or  may be sentenced to death.

**18 USC §245** provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both, and if death results or if such acts include  kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be subject to imprisonment for any term of years or for life or  may be sentenced to death.

**42 USC §1983** provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning**, you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages.  Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

**Notice of Service:**

I, _____certify that I personally delivered this notice to above named recipient

and address on _____at _____(am/pm).

Public Domain—Privacy Form COL(02)

| Form **COL** | **Violation Warning** |
|---|---|
| | **Denial of Rights Under Color of Law** |

▶ **Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983**

| Name and address of Citizen | Name and address of Notice Recipient |
|---|---|
| Brandon Adams<br>2701 North Rainbow Blvd #2095<br>Las Vegas, NV 89108 | Clifton Cislak (Clerk)<br>U.S. Court of Appeals for the D.C. Circuit<br>333 Constitution Ave NW<br>Washington, DC 20001 |

Citizen's statement:

First, Seventh, Fourteenth Amendment & Article VI  Supreme Law Clause 2 Supremacy Clause, Howlett v. Rose, 496 U.S. 356 (1990) Rule 25. Filing and Service (a) Filing (1) Filing with the Clerk (2) Filing: Method and Timeliness (4) Clerk's Refusal of Documents (d) Proof of Service (iii) 28 U.S. Code § 1691 - Seal and teste of process, Rule 21. Writs of Mandamus and Prohibition, and Other Extraordinary Writs (a) Mandamus or Prohibition to a Court: Petition. Filing.

I certify that the forgoing information stated here is true and correct.

**Citizen's signature**

▶ *Brandon Adams*                                             Date ▶ 01/14/2025

## Legal Notice and Warning

**Federal law provides that it is a crime to violate the Constitutional Rights of a citizen under the Color of Law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to **coerce** or **deceive** a citizen to surrender his **Constitutional Rights** is a **Federal Crime**. Federal Courts have found that your ignorance of the law is no excuse.

**18 USC §242** provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**18 USC §245** provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both, and if death results or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be subject to imprisonment for any term of years or for life or may be sentenced to death.

**42 USC §1983** provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning**, you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages. Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

**Notice of Service:**

I, _____ certify that I personally delivered this notice to above named recipient

and address on _____ at _____(am/pm).

Public Domain—Privacy Form COL(02)



**U.S. Department of Justice**

Office of the Associate Attorney General

---

*Associate Attorney General*                                        *Washington, D.C. 20530*

April 20, 2023

Dear Colleague:

The U.S. Department of Justice (Department) is committed to working with state and local courts and juvenile justice agencies to ensure that their assessment of fines and fees is constitutional and nondiscriminatory. To advance that goal, the Department has revised and updated a letter it previously issued in 2016 that focused on the assessment of fines and fees against adults, as well as a 2017 advisory addressing the assessment of fines and fees against juveniles. The letter, issued today by the Civil Rights Division, Office of Justice Programs, and Office for Access to Justice, addresses in detail the assessment of fines and fees against both adults and juveniles. The letter includes an updated discussion of the relevant case law on the assessments of fines and fees, cautions against discriminatory enforcement of fines and fees, and details the obligations of federal funding recipients to comply with federal statutory prohibitions against discrimination in the imposition and collection of fines and fees.

The letter outlines circumstances where unjust imposition and enforcement of fines and fees violate the civil rights of adults and youth accused of felonies, misdemeanors, juvenile offenses, quasi-criminal ordinance violations, and civil infractions, as well as circumstances that raise significant public policy concerns. In particular, the letter outlines the below seven constitutional principles:

(1) The Eighth Amendment prohibits the imposition of fines and fees that are grossly disproportionate to the severity of the offense;

(2) The Fourteenth Amendment prohibits incarceration for nonpayment of fines and fees without first conducting an ability-to-pay determination and establishing that the failure to pay is willful;

(3) The Fourteenth Amendment requires the consideration of alternatives before incarcerating individuals who are unable to pay fines and fees;

(4) The Fourteenth Amendment prohibits the imposition of fines and fees that create conflicts of interest;

(5) The Fourteenth Amendment prohibits conditioning access to the judicial process on the payment of fees by individuals who are unable to pay;

(6) The Sixth and Fourteenth Amendments require due process protections, such as access to counsel in appropriate cases, as well as notice, when imposing and enforcing fines and fees; and

(7) The Fourteenth Amendment prohibits the imposition of fines and fees in a manner that intentionally discriminates against a protected class.

In addition to constitutional responsibilities and related public policy concerns, the letter outlines the obligations of recipients of federal financial assistance (including courts) under Title VI of the Civil

Rights Act of 1964 (Title VI), the Omnibus Crime Control and Safe Streets Act of 1968 (Safe Streets Act), and other statutes with nondiscrimination provisions. Collectively, these statutes, and their implementing regulations, prohibit recipients of federal financial assistance from discriminating on the basis of race, color, national origin, religion, and sex. For example, under Title VI and the Safe Streets Act, which both prohibit national origin discrimination, state court systems and other federal funding recipients are required to take reasonable steps to provide meaningful access to people who have limited proficiency in English.

As noted in the letter, imposition of fines and fees that do not comply with constitutional and statutory requirements, or that fail to take account of other public policy concerns, may erode trust between local governments and their constituents, increase recidivism, undermine rehabilitation and successful reentry, and generate little or no net revenue. The letter further notes that the detrimental effects of unjust fines and fees (including escalating debt, being subjected to changes in immigration status, and loss of one's employment, driver's license, voting rights, or home, among others) fall disproportionately on low-income communities and people of color, who are overrepresented in the criminal legal system and may already face economic obstacles arising from discrimination, bias, or systemic inequities. Moreover, the letter emphasizes the negative impact of imposing fines and fees on youth, which may also fall on families in low-income communities and people of color, because youth are unlikely to be able to afford to pay fines or fees without familial support.

The letter also identifies best practices and recommendations that courts can consider and adopt related to each principle. The letter acknowledges that many states, municipalities, and court leaders have adopted innovative approaches to reduce their reliance on fines and fees. The Department's Office for Access to Justice is developing a best practices guide, which will highlight work and efforts by states, municipalities, and court leaders in this area.

The Department remains committed to collaborating with court leaders and stakeholders in the criminal legal system to develop and share solutions. The Department is open to serve as a resource, collaborate and promote solutions, and provide grant funding and technical assistance to state, county, local, and tribal courts to improve the functioning and fairness of the justice system.

To that end, in the coming weeks, the Department's Office of Justice Programs, Bureau of Justice Assistance will release a solicitation ("The Price of Justice: Rethinking the Consequences of Fines and Fees") seeking a training and technical assistance provider to work with a select number of jurisdictions interested in understanding and reforming their fines and fees policies and practices, and ultimately seeking to reduce the use of unjust fines and fees and redirect the resources used in these systems into activities with a greater return on public safety. The Department of Justice supports wide dissemination of the letter.

Sincerely,

Vanita Gupta
Associate Attorney General



**U.S. Department of Justice**

Civil Rights Division

Office of Justice Programs

Office for Access to Justice

---

*Washington, D.C. 20530*


April 20, 2023


Dear Colleague:

The U.S. Department of Justice (Department) is committed to working with state and local courts and juvenile justice agencies to ensure that their assessment of fines and fees is constitutional and nondiscriminatory.[1] Court leaders, court administrators, lawmakers, advocates, and other stakeholders have urged the Department to provide greater clarity to state and local courts regarding their legal obligations with respect to fines and fees and to share best practices.[2]

This letter revises and updates a similar letter issued by the Department in March 2016[3] regarding the imposition and enforcement of fines and fees on adults in the criminal justice system, and a January 2017 advisory[4] setting forth the constitutional and statutory responsibilities regarding imposing and enforcing fines and fees on youth involved in the juvenile or criminal justice systems. This letter addresses some of the most common court-imposed fines and fees practices—applicable to adults and youth—with potential to run afoul of the U.S. Constitution.[5] This letter also describes relevant constitutional and statutory protections against discrimination and explains how they apply to fines and fees. Finally, many states, municipalities, and court leaders are adopting innovative approaches to reduce their reliance on fines and fees, and this letter

---

[1] This document does not bind the public. Rather, it advises the public of how the Department understands, and is likely to apply, binding laws and regulations. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) (plurality opinion) (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)).

[2] As used in this letter, "courts" include state or local courts and the juvenile justice system applicable to youth, including juvenile courts and juvenile justice agencies. "Fines" are monetary punishments for infractions, misdemeanors, or felonies that may be imposed to deter crime or punish people convicted of an offense. "Fees" are itemized payments for court activities, supervision, or incarceration charged to people accused of or determined guilty of infractions, misdemeanors, or felonies, that may be unrelated to a conviction or punishment. *See generally* Council of Econ. Advisers, *Issue Brief: Fines, Fees, and Bail* 1 (Dec. 2015), https://perma.cc/K88Z-8L8X. The Department notes that any non-Departmental studies or external resources cited or linked to in this letter are provided for informational purposes only and do not necessarily represent the views of the Department.

[3] This letter updates and supersedes the March 2016 Dear Colleague Letter, which was rescinded in December 2017.

[4] This letter also updates and supersedes the January 2017 Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on Levying Fines and Fees on Youth Involved with the Juvenile Justice System, which was rescinded in December 2017.

[5] This letter addresses only fines and fees levied against individuals. Fines and fees levied against corporations do not raise the same concerns. Likewise, this letter does not address the imposition or enforcement orders relating to restitution for crime victims.

identifies some best practices, recommendations, and policy considerations that courts can consider and adopt.

There are circumstances in which assessment of fines and fees may be lawful, and many jurisdictions, lacking other dedicated sources of funding, rely on some of the revenue generated by fines and fees for important purposes. For example, some jurisdictions use some of the revenue generated by fines and fees to support crime victim services, including to reimburse victims for a wide variety of crime-related expenses, such as medical costs, mental health counseling, lost wages, as well as funeral and burial expenses.

But as this letter describes, in certain circumstances, unjust imposition and enforcement of fines and fees violate the civil rights of adults and youth accused of felonies, misdemeanors, quasi-criminal ordinance violations, and civil infractions.[6] The unjust imposition of fines and fees also raises significant public policy concerns. Imposing and enforcing fines and fees on individuals who cannot afford to pay them has been shown to cause profound harm. Individuals confront escalating debt; face repeated, unnecessary incarceration for nonpayment of fines and fees; experience extended periods of probation and parole; are subjected to changes in immigration status; and lose their employment, driver's license, voting rights, or home. This practice far too often traps individuals and their families in a cycle of poverty and punishment that can be nearly impossible to escape.[7] The detrimental effects of unjust fines and fees fall disproportionately on low-income communities and people of color, who are overrepresented in the criminal justice system and already may face economic obstacles arising from discrimination, bias, or systemic inequities.[8]

Fines and fees can be particularly burdensome for youth, who may be unable to pay court-issued fines and fees themselves, burdening parents and guardians who may face untenable choices between paying court debts or paying for the entire family unit's basic necessities, like food, clothing, and shelter.[9] Children subjected to unaffordable fines and fees often suffer escalating negative consequences from the justice system that may follow them into adulthood.[10]

---

[6] *See, e.g.,* C.R. Div., U.S. Dep't of Just., *Investigation of the Ferguson Police Department* (Mar. 4, 2015), https://perma.cc/7QR3-BRLD (finding that the Ferguson, Missouri municipal court routinely deprived people of their constitutional rights to due process and equal protection and other federal protections); Brennan Ctr. for Just., *Criminal Justice Debt: A Barrier to Reentry* (2010), https://perma.cc/L7JA-RKXY (reporting on fine and fee practices in fifteen states); Am. C.L. Union, *In for a Penny: The Rise of America's New Debtors' Prisons* (Oct. 2010), https://perma.cc/Y7BU-SK85 (discussing practices in several states); Dick M. Carpenter II et al., Institute for Justice, *The Price of Taxation by Citation: Case Studies of Three Georgia Cities That Rely Heavily on Fines and Fees* (2019), https://perma.cc/7XK4-HLQ8.

[7] *See* Council of Econ. Advisers, *supra* note 2, at 1 (describing the impact on the poor of fixed monetary penalties, which "can lead to high levels of debt and even incarceration for failure to fulfil a payment" and create "barriers to successful re-entry after an offense"); Ala. Appleseed Ctr. for Law and Just., *Under Pressure: How Fines and Fees Hurt People, Undermine Public Safety, and Drive Alabama's Wealth Divide* (2018), https://perma.cc/A8Z9-Y3U4.

[8] *See, e.g.,* Tex. Fair Def. Project & Tex. Appleseed, *Driven by Debt: The Failure of the OmniBase Program* (2021), https://perma.cc/2AJK-VEX3; Maria Rafael, Vera Inst. of Just., *The High Price of Using Justice Fines and Fees to Fund Government in Washington State* 5 (2021), https://perma.cc/26G3-7BNS.

[9] Leslie Paik & Chiara Packard, Juv. Law Ctr., *Impact of Juvenile Justice Fines and Fees on Family Life: Case Study in Dane County, WI* 12-14 (2019), https://perma.cc/T837-T6TY.

[10] Jessica Feierman, Juv. Law Ctr., *Debtors' Prison for Kids? The High Cost of Fines and Fees in the Juvenile Justice System* (2016), https://perma.cc/C78Z-Z6KR. Recognizing these concerns, many states have eliminated or significantly reduced the number of fines and fees in their juvenile systems since the Department issued the 2017 advisory. These states include California, Louisiana, Maryland, Nevada, New Mexico, New Hampshire, New Jersey,

2

Notably, in addition to raising serious legal and practical concerns, assessment of unaffordable fines and fees often does not achieve the fines' and fees' stated purposes. In many cases, unaffordable fines and fees undermine rehabilitation and successful reentry and increase recidivism for adults and minors.[11] And to the extent that such practices are geared toward raising general revenue and not toward addressing public safety, they can erode trust in the justice system.[12]

The legal discussion below is intended to serve as a guide to constitutional protections related to assessing fines and fees and additional legal protections against the discriminatory imposition of fines and fees. Whether a particular policy regarding fines and fees complies with or violates these constitutional principles or federal statutory obligations requires a fact-specific analysis. This letter also identifies recommended policy considerations relevant to determinations about the circumstances in which fines and fees should and should not be imposed.

As court leaders and criminal justice stakeholders, your leadership on fines and fees is critical to ensure equal access to justice. Accordingly, as you review and reflect on this information, we strongly encourage you to consider alternative ways to obtain resources other than through the assessment of fines and fees. We also recommend that you review your jurisdiction's rules and procedures to ensure that they comply with the U.S. Constitution and federal law and promote sound public policy. We support wide dissemination of this letter, and welcome collaboration with you to develop and share solutions. We encourage you to forward this letter to every judge in your jurisdiction; to provide appropriate training for judges, prosecutors, and

---

Oregon, Texas, Utah, and Virginia as well as individual localities such as Chatham County, Georgia; Dane County, Wisconsin; Johnson County, Kansas; Macomb County, Michigan; Philadelphia, Pennsylvania; and Shelby County, Tennessee. *See* Cristina Mendez, Jeffrey Selbin & Gus Tupper, *Blood from a Turnip: Money as Punishment in Idaho*, 57 Idaho L. Rev. 767 (2021) (listing the states and localities that have reduced or eliminated juvenile fees to date), https://perma.cc/N29P-PFLE; Jeffrey Selbin, *Juvenile Fee Abolition in California: Early Lessons and Challenges for the Debt-Free Justice Movement*, 98 N.C. L. Rev. 401 (2020) (describing the growing national movement to repeal juvenile fines and fees), https://perma.cc/T5K6-UQ2S.

[11] Berkeley Law Pol'y Advoc. Clinic, *Making Families Pay* 18 (2017), https://perma.cc/RQK9-JQFG (reporting that, in fiscal year 2014-15, Orange County spent "over $1.7 million to employ 23 individuals to collect just over $2 million" in juvenile administration fees, and ultimately netted only $371,347, which represents less than .0068% of its annual budget); Matthew Menendez et al., Brennan Ctr. for Just., *The Steep Costs of Criminal Justice Fines and Fees* 9 (2019), https://perma.cc/7MQS-32KE (describing the high costs of fines and fees enforcement, including in-court proceedings, jail costs, warrant enforcement, and probation supervision, and estimating that collecting revenue through fines and fees consumes almost 100 times more resources than collecting it through general taxation); Alexandra Bastien, *Ending the Debt Trap: Strategies to Stop the Abuse of Court-Imposed Fines and Fees* 4-7 (2017), https://perma.cc/FZ2R-TP2M (describing the inefficiency and consequences of raising revenue through fines and fees); Alex R. Piquero & Wesley G. Jennings, *Justice System-Imposed Financial Penalties Increase Likelihood of Recidivism in a Sample of Adolescent Offenders*, 15 Youth Violence & Juv. Just. 325 (2017), https://journals.sagepub.com/doi/10.1177/15412040016669213 (finding a strong positive correlation between monetary sanctions and youth recidivism); *see also* Council of Econ. Advisers, *supra* note 2.

[12] *See* Conf. of State Ct. Adm'rs, *2011-2012 Policy Paper: Courts Are Not Revenue Centers* (2012), https://perma.cc/75FU-BS5C. In some jurisdictions, the revenue may even be lower than the cost to incarcerate people for the failure to pay fines and fees. Mathilde Laisne et al., Vera Inst. of Just., *Past Due: Examining the Costs and Consequences of Charging for Justice in New Orleans* 24 (2017), https://perma.cc/VYW5-LPWS (determining that pretrial fines and fees enforcement costs New Orleans $1.9 million more in jail costs than the revenue it generates for criminal justice agencies). Critically, many jurisdictions do not track the costs of collecting fines and fees; it is therefore difficult to assess whether it effectively generates revenue at all. *See* Menendez et al., *supra* note 11, at 9 (describing the high costs of fines and fees). Thus, jurisdictions are encouraged to closely track these costs to determine whether fines and fees generate revenue.

3

probation officials regarding fines and fees; and to develop resources, such as bench books, to assist judges in performing their duties lawfully and effectively.

## A.    Constitutional Principles Relevant to the Assessment and Enforcement of Fines and Fees

The basic constitutional principles relevant to the imposition and enforcement of fines and fees by state and local courts, which apply to both adults and youth,[13] are grounded in the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. These principles, explained in subsequent sections below, are:

(1) The Eighth Amendment prohibits the imposition of fines and fees that are grossly disproportionate to the severity of the offense;

(2) The Fourteenth Amendment prohibits incarceration for nonpayment of fines and fees without first conducting an ability-to-pay determination and establishing that the failure to pay is willful;

(3) The Fourteenth Amendment requires the consideration of alternatives before incarcerating individuals who are unable to pay fines and fees;

(4) The Fourteenth Amendment prohibits the imposition of fines and fees that create conflicts of interest;

(5) The Fourteenth Amendment prohibits conditioning access to the judicial process on the payment of fees by individuals who are unable to pay;

(6) The Sixth and Fourteenth Amendments require due process protections, such as access to counsel in appropriate cases, as well as notice, when imposing and enforcing fines and fees; and

(7) The Fourteenth Amendment prohibits the imposition of fines and fees in a manner that intentionally discriminates against a protected class.

### 1.    The Eighth Amendment prohibits the imposition of fines and fees that are grossly disproportionate to the severity of the offense.

The Eighth Amendment prohibits imposing excessive fines. A fine is unconstitutionally excessive under the Eighth Amendment when it "is grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998). In *Timbs v. Indiana*, the U.S. Supreme Court unanimously held that the Excessive Fines Clause is incorporated by the Fourteenth Amendment's Due Process Clause and is therefore applicable to the states. 139 S. Ct. 682, 687 (2019). The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*,

---

[13] As the U.S. Supreme Court has clearly held, "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault*, 387 U.S. 1, 13 (1967).

4

509 U.S. 602, 609-10 (1993) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).

When assessing fines and fees that are at least in part punitive, courts are required to consider the severity of the offense. *Bajakajian*, 524 U.S. at 336-37; *Austin*, 509 U.S. at 609-10. As part of this broader analysis, we recommend that courts also consider individuals' economic circumstances when assessing fines and fees. The U.S. Supreme Court in *Timbs* noted that the Magna Carta "required that economic sanctions . . . 'not be so large as to deprive [an offender] of his livelihood.'" 139 S. Ct. at 688 (second alteration in original) (quoting *Browning-Ferris*, 492 U.S. at 271). Some courts have required consideration of an individual's economic circumstances as part of the proportionality assessment.[14]

Regardless of whether it is constitutionally required, consideration of an individual's economic circumstances is a logical approach because fines and fees will affect individuals differently depending on their resources. When a person already cannot afford a basic need, such as housing, a fine or fee of any amount can be excessive in light of that person's circumstances, and thus may not be appropriate even if it were legally permitted.[15]

In addition, there are practical realities that weigh substantially against imposing fines and fees against youth. For example, minors are generally unable to earn the money needed to pay fines and fees because many are too young to legally work, are of compulsory school age or full-time students, have great difficulty obtaining employment due to having a juvenile or criminal record, or simply do not yet have employable skills typically expected of adults. As such, the imposition of any fine or fee on youth has the potential to be an excessive and unreasonable burden.[16]

---

[14] The Washington Supreme Court recently observed, "[a] number of modern state and federal courts have joined the chorus of legal scholars to conclude that the history of the clause and the reasoning of the Supreme Court strongly suggest that considering ability to pay is constitutionally required." *Seattle v. Long*, 493 P.3d 94, 112 (Wash. 2021); *see also, e.g., Dep't of Labor & Emp't v. Dami Hosp., LLC*, 442 P.3d 94, 101 (Colo. 2019) (History and precedent constitute "persuasive evidence that a fine that is more than a person can pay may be 'excessive' within the meaning of the Eighth Amendment."); *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 871 (Pa. 2014) ("[T]he excessive fines analysis . . . requires . . . a thorough examination of every property owner's circumstances . . . .").

[15] Fining a person who is unhoused can destabilize that person and can further obstruct their ability to satisfy basic needs. Moreover, fining a person in such circumstances is likely ineffective. Unhoused individuals—who are unable to afford a place to live or sleep—are unlikely to be able to pay any fine or fee. *See* Jessica Mogk et al., *Court-Imposed Fines as a Feature of the Homelessness-Incarceration Nexus: A Cross-Sectional Study of the Relationship Between Legal Debt and Duration of Homelessness in Seattle, Washington, USA*, 42 J. Pub. Health e107 (2019), https://perma.cc/SP6Y-ZLEL (finding that unhoused adults with unpaid fines and fees were unhoused for longer periods of time than those with no legal debt, that fewer than one in four unhoused adults with debt from legal fines had ever made a payment on them, and that more than half of sentences imposed included a fine); *see also Blake v. City of Grants Pass*, No. 1:18-cv-01823, 2020 WL 4209227, at *11 (D. Or. July 22, 2020) (observing that unhoused people "do not have enough money to obtain shelter, so they likely cannot pay . . . fines"), *aff'd in part, vacated in part on other grounds sub nom. Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022). Further, laws requiring the imposition of fines and fees against unhoused individuals for behaviors related to living unhoused—such as panhandling or sleeping in public—may violate the First Amendment or the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Martin v. Boise*, 920 F.3d 584, 617 (9th Cir. 2019) (holding that, "as long as there is no option of sleeping indoors, the government cannot [under the Cruel and Unusual Punishment Clause] criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter"); *Norton v. City of Springfield*, 806 F.3d 411, 412-13 (7th Cir. 2015) (invalidating on First Amendment grounds an ordinance that restricted panhandling in the "downtown historic district").

[16] The Supreme Court has not expressly held that the Eighth Amendment's prohibitions against excessive fines and

### 2. The Fourteenth Amendment prohibits incarceration for nonpayment of fines and fees without first conducting an ability-to-pay determination and establishing that the failure to pay is willful.

The due process and equal protection principles of the Fourteenth Amendment prohibit "punishing a person for his poverty." *Bearden v. Georgia*, 461 U.S. 660, 671 (1983). Thus, the U.S. Supreme Court has repeatedly held that the government may not incarcerate individuals solely because of their inability to pay a fine or fee. In *Bearden*, the Court explained that cases about equal access to justice involve both equal protection and due process principles, and they therefore require courts to conduct a "careful inquiry" that balances the individual's interests against the state's interests. *Id.* at 666-67. After conducting this inquiry, the Court prohibited the incarceration of an indigent probationer for failing to pay a fine despite bona fide efforts to do so because "[t]o do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine." *Id.* at 672-73. "Such a deprivation," the Court continued, "would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 673; *see also Tate v. Short*, 401 U.S. 395, 398 (1971) (holding that the state could not convert defendant's unpaid fine for a fine-only offense to incarceration because that would subject him "to imprisonment solely because of his indigency"); *Williams v. Illinois*, 399 U.S. 235, 241-42 (1970) (holding that an indigent defendant could not be imprisoned longer than the statutory maximum for failing to pay his fine). The U.S. Supreme Court reaffirmed this principle in *Turner v. Rogers*, 564 U.S. 431 (2011), holding that a court cannot jail a parent for failure to pay child support without providing adequate procedural safeguards to ensure consideration of the parent's ability to pay. *Id.* at 445-48.[17]

State and local courts have an affirmative duty to determine an individual's ability to pay and whether any nonpayment was willful before imposing incarceration as a consequence. *See Bearden*, 461 U.S. at 672 (holding that in probation revocation proceedings "for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay").[18] State and local courts should conduct this analysis even if a defendant does not specifically raise the issue. *See id.*

When assessing whether nonpayment was willful, the key question is whether the individual has made "sufficient bona fide efforts legally to acquire the resources to pay." *Bearden*,

---

fees apply with any greater force to youth. However, the Court has consistently recognized that, as a general matter, standards of culpability and punishment should apply differently in the juvenile context. *See Roper v. Simmons*, 543 U.S. 551, 575 (2005) (holding the death penalty disproportionate when imposed on youth); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (sentencing a young person who committed a non-homicide offense to life without parole violates the Eighth Amendment); *Miller v. Alabama*, 567 U.S. 460, 465 (2012) (sentencing a young person to mandatory life imprisonment without parole violates the Eighth Amendment). Accordingly, and particularly in light of the policy considerations referenced above, the Department encourages state and local courts to seek alternatives to fines and fees when engaging youth.

[17] Based on these principles, the Department has determined that bail practices that result in pretrial incarceration based on poverty violate the Fourteenth Amendment. U.S. Amicus Br. at 16-19, *Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (No. 18-11368); U.S. Amicus Br. at 18-20, *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018) (No. 16-10521-HH); U.S. Amicus Br. at 17-21, *Walker v. City of Calhoun*, 682 F. App'x 721 (11th Cir. 2017) (No. 16-10521).

[18] Furthermore, Idaho's Supreme Court has held that, under *Bearden*, "a court must inquire into an individual's ability and efforts to pay a court-ordered fine before issuing a warrant . . . for failing to pay." *Beck v. Elmore Cnty. Magistrate Ct.*, 489 P.3d 820, 836 (Idaho 2021) (holding that magistrate court's failure to consider the defendant's ability to pay before issuing an arrest warrant for nonpayment of fines and fees violated the Fourteenth Amendment).

6

461 U.S. at 661-62, 672. In making ability-to-pay assessments, courts should rely on "criteria typically considered daily by sentencing courts throughout the land." *Id.* at 673 n.12. Historically, in undertaking this analysis, courts have not considered how an individual spends money, but have instead focused solely on whether the individual has sufficient income and financial resources to pay the fine at issue while still meeting basic needs. *See, e.g., Tate*, 401 U.S. at 396 n.1 (considering evidence at sentencing hearing that petitioner and his family were "poverty stricken," that he earned limited income in "casual employment" and received monthly federal benefits, and that his family relied on him for support in finding that petitioner could not afford fees); *see also* U.S. Sent'g Guidelines Manual § 5E1.2(d)(2) (directing courts to consider "earning capacity and financial resources" when assessing a defendant's ability to pay a fine); Consent Decree at 9, *McNeil v. Comm. Prob. Servs.*, No. 1:18-cv-00033 (M.D. Tenn. Jan. 13, 2022) (requiring that neither an individual's expenses nor the financial resources of her friends and family members be considered in determining ability to pay).

A willfulness determination must be fair and accurate. Due process requires that courts uniformly and consistently apply standards for making such determinations, such as notifying the defendant that their ability to pay will be considered by the court and providing a meaningful opportunity for the defendant to be heard regarding their ability to pay. *See Turner*, 564 U.S. at 447-48 (holding that such procedures are adequate safeguards against unrepresented parties being jailed based on an inability to make child-support payments).

Even independent of legal considerations, jurisdictions may also benefit from creating presumptions of indigency for certain classes of defendants—for example, those who are eligible for public benefits, unhoused, living below a certain income level, or serving a term of confinement. *See, e.g.*, R.I. Gen. Laws § 12-20-10(a), (b) (2022) (listing conditions considered "prima facie evidence of the defendant's indigency" and limited ability to pay, including but not limited to "[q]ualification for and/or receipt of" public assistance, disability insurance, and food stamps); Consent Decree at 9, *McNeil v. Comm. Prob. Servs.*, No. 1:18-cv-00033 (M.D. Tenn. Jan. 13, 2022) (committing the parties to presume indigence for individuals whose net household income falls below 200% of the federal poverty guidelines; who were eligible for appointed counsel in a criminal case; who are eligible to receive or have dependents who are eligible to receive aid from any federal or state public assistance program based on financial hardship; and/or who are unhoused). This approach is logical, as individuals who cannot afford to pay for their basic needs also cannot afford to pay fines and fees out of their already insufficient incomes. It also conserves court resources by removing the obligation to conduct duplicative ability to pay assessments. Similarly, jurisdictions should presume that children and youth are indigent and unable to pay fines and fees.[19] States are increasingly passing legislation or changing court rules to codify a presumption of indigence for minors.[20]

---

[19] *See, e.g.*, C.R. Div., U.S. Dep't of Just., Mem. of Agreement Regarding the Juv. Cts. of Memphis & Shelby Cnty. 9 (Dec. 17, 2012), https://perma.cc/MM49-G9GE (Under that agreement, children must be presumed indigent unless information to the contrary is provided to the juvenile court.).

[20] *See, e.g.*, Del. Code Ann. Tit. 29, § 4602(c) (West 2016) ("Any person under the age of 18 arrested or charged with a crime or act of delinquency shall be automatically eligible for representation by the Office of Defense Services."); La. Child. Code Ann. Art. 320(a) (2022) ("For purposes of the appointment of counsel, children are presumed to be indigent."); Mass. S.J.C. Rule 3:10(h)(iv) (2016) (defining as indigent "a juvenile, a child who is in the care or custody of the Department of Children and Families, or a young adult"); Mont. Code Ann. § 47-1-104 (4)(b)(ii)-(iii) (West 2013) (providing that every youth charged in delinquency proceedings "is entitled by law to the assistance of counsel at

Furthermore, we recommend that courts conduct a willfulness analysis and apply *Bearden*'s balancing framework before imposing other adverse consequences that implicate liberty or property interests on an indigent criminal defendant for nonpayment. As the U.S. Supreme Court has recognized, non-carceral penalties "may bear as heavily on an indigent accused as forced confinement." *See Mayer v. Chicago*, 404 U.S. 189, 197 (1971) (stressing that "[t]he collateral consequences of conviction may be even more serious"); *Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that driver's licenses "may become essential in the pursuit of a livelihood"). Although some courts have declined to apply *Bearden* itself outside of the incarceration context, extending the *Bearden* guarantees to other serious adverse consequences will avoid depriving people of their liberty and property interests based on no fault of their own. *See Mendoza v. Strickler*, 51 F.4th 346, 357 (9th Cir. 2022) (observing that *Bearden* and related cases "address[] only the limitations on imposing subsequent or additional *incarceration* on those unable to pay their fines"); *Jones v. Governor of Florida*, 975 F.3d 1016, 1032 (11th Cir. 2020) (en banc) ("The Supreme Court has never extended *Bearden* beyond the context of poverty-based *imprisonment*."). In addition, some courts have held that individuals should not be required to complete extended terms or more burdensome conditions of supervision solely because of their inability to pay fees.[21] Other courts have similarly held that individuals should not be barred from participating in or completing a diversion program, be subjected to more onerous conditions for participating in a diversion program, or have a diversion program extended because they cannot pay fees.[22]

---

public expense regardless of the person's financial ability to retain private counsel"); N.C. Gen. Stat. Ann. § 7b-2000(b) (West 2001) ("All juveniles shall be conclusively presumed to be indigent, and it shall not be necessary for the court to receive from any juvenile an affidavit of indigency."); Ohio Admin. Code 120-1-03(B)(4) (2017) ("An applicant is presumed indigent and thus entitled to the appointment of counsel at state expense [when] [t]he applicant is a child . . . . In determining the eligibility of a child for appointed counsel, the income of the child's parent, guardian, or custodian shall not be considered."); 42 Pa. Stat. and Cons. Stat. Ann. § 6337.1(b)(1) (West 2012) ("In delinquency cases, all children shall be presumed indigent."); Vt. Stat. Ann. Tit. 13, § 5238(g) (West 2016) (While nearly all potential defendants are evaluated to determine whether they should pay a co-payment or reimburse the state for publicly-funded legal counsel, the statute provides that "[a] juvenile shall not be ordered to pay any part of the cost of representation."); Wash. Rev. Code Ann. § 13.40.140(2) (West 2022) (While a youth's family's ability to pay will be assessed, "[t]he ability to pay part of the cost of counsel does not preclude assignment [and] [i]n no case may a juvenile be deprived of counsel because of a parent, guardian, or custodian refusing to pay."); Wis. Stat. Ann. § 938.23(1m)(a), (4) (West 2016) (providing a right to counsel to all youth charged with delinquency or held in detention, and providing that "[i]f a [child] has a right to be represented by counsel or is provided counsel at the discretion of the court under this section and counsel is not knowingly and voluntarily waived, the court shall refer the [child] to the state public defender and counsel shall be appointed by the state public defender . . . without a determination of indigency").

[21] *See, e.g., McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-00033, 2021 WL 366776, at *28 (M.D. Tenn. Feb. 3, 2021) ("In the Court's view, *Bearden* applies to the restrictions on the liberty interests identified by Plaintiffs for those on supervised probation, including the requirement that they report regularly to [Community Probation Services], submit to drug tests (for which they are charged), refrain from traveling or moving freely, and the risk they will be arrested and/or jailed for alleged violations of conditions. This loss of liberty allegedly is not imposed (at least to the same extent) on those who are moved to unsupervised probation because they have the means to pay off the amounts owed."); *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 775, 775-76 (M.D. Tenn. 2016) (applying *Bearden* to the imposition of onerous requirements and extended supervision terms on probationers).

[22] *See, e.g., Briggs v. Montgomery*, No. CV-18-02684-PHX-EJM, 2019 WL 2515950, at *10-13 (D. Ariz. June 18, 2019) (applying *Bearden*'s principles to the imposition of longer supervision terms and more onerous conditions on diversion participants who cannot afford to pay fees); *Mueller v. State*, 837 N.E.2d 198, 201-05 (Ind. Ct. App. 2005) (applying the *Bearden* framework to find that a criminal defendant's exclusion from a diversion program because she could not pay a fee violated the Fourteenth Amendment).

### 3.    The Fourteenth Amendment requires the consideration of alternatives before incarcerating individuals who are unable to pay fines and fees.

Before an individual is incarcerated for a non-willful failure to pay a financial obligation, the Fourteenth Amendment requires a careful inquiry into factors such as the individual interest at stake, the extent to which the consequence imposes upon that interest, the rationality of the connection between the consequence and the state's interests, and whether "alternate measures" are "adequate to meet the State's interests." *See Bearden*, 461 U.S. at 666-67, 672.

We further recommend that, in the context of nonpayment of fines or fees due to inability to pay, state and local courts consider alternatives before imposing adverse consequences that implicate liberty or property interests. It is the position of the United States that imposing certain serious adverse consequences for failure to pay an unaffordable fine or fee, where alternative approaches could serve the government's interests, violates the Fourteenth Amendment. *See, e.g.,* U.S. Statement of Interest at 17-18, *Stinnie v. Holcomb*, No. 3:16-CV-00044 (W.D. Va. Nov. 7, 2016), U.S. Statement of Interest (Doc. 27) at 17-18 (arguing that automatically suspending drivers' licenses for unpaid fines was unconstitutional because there were alternative means of serving the state's interests); *see also* Section A.2, *supra; cf.* U.S. Amicus Br. at 19, *Daves, supra* (No. 18-11368) (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc)) (concluding that the government cannot detain individuals for failure to pay an unaffordable bail amount absent a finding that alternatives would not adequately protect the government's interests in public safety and ensuring appearance at trial). States and localities should consider—at least as a best practice—requiring a factfinder to reach a reasoned determination that alternatives to a contemplated adverse consequence are inadequate to meet the State's interests in securing payment before penalizing individuals for their inability to pay.

As a best practice, jurisdictions should consider collecting fines and fees by, for instance, adopting penalty-free payment plans, offering amnesty periods during which individuals can have warrants cancelled and fees waived, or connecting individuals who cannot afford to pay fines and fees with workforce development and financial counseling programs.[23] These alternatives are likely to serve a jurisdiction's interest in ensuring payment of fines and fees better than incarceration or other adverse consequences. As the Court in *Bearden* observed,

> given the general flexibility of tailoring fines to the resources of a defendant, or even permitting the defendant to do specified work to satisfy the fine . . . a sentencing court can often establish a reduced fine or alternative public service in lieu of a fine that adequately serves the State's goals of punishment and deterrence . . . .

461 U.S. at 672. Further, where appropriate, jurisdictions may also consider waiving or reducing the debt of a person unable to pay the debt. Jurisdictions can also consider alternatives to imposing punitive financial obligations in the first place. Alternatives could include, for example, requiring an individual to attend traffic or public safety classes, or imposing community service. Indeed, a

---

[23] *See, e.g.*, City of Montgomery, *Amnesty Days*, https://perma.cc/VS6T-B8K7 (last visited Apr. 18, 2023); *see also* Justin Ove, *City of Atlanta Municipal Court Announces Warrant Amnesty Program*, Patch.com (Feb. 10, 2015), https://perma.cc/UBX8-67KT.

9

number of jurisdictions have codified consideration of alternatives as a requirement into state law.[24]

Importantly, however, states and local governments should be mindful that these alternatives can, under certain circumstances, inadvertently impose greater penalties on those who are economically disadvantaged. For example, a payment plan might still unnecessarily penalize a low-income person for their poverty if the plan imposes onerous user fees or interest. Debts that are sold to third-party debt collectors can have a significant impact on credit scores, in turn affecting employment and housing opportunities. In addition, individuals' financial circumstances may change over the duration of a payment plan. Providing a mechanism for individuals to seek reductions in their monthly obligations in light of changed circumstances helps to protect against violations of individuals' Fourteenth Amendment rights.[25]

As a practical matter, the imposition of seemingly non-financial obligations may still result in indirect financial obligations. For example, while community service could be an alternative to payment for adults or youth, it could nevertheless exact a financial consequence if individuals are required to pay costs for participation, take unpaid leave from their jobs, pay for childcare, or miss educational opportunities to fulfill it. The same may be true for alternatives to adverse consequences that involve education, substance abuse and mental health counseling, and other programs. Public policy considerations counsel in favor of courts recognizing such obligations, particularly in considering whether an individual has an inability versus an unwillingness to comply. In the case of minors, any community-service obligations should be designed to avoid undermining treatment, services, fulfillment of other court-ordered conditions, compulsory school attendance, or educational and vocational attainment.

4.    **The Fourteenth Amendment prohibits the imposition of fines and fees that create conflicts of interest.**

The Due Process Clause of the Fourteenth Amendment "entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). Accordingly, in *Tumey v. Ohio*, 273 U.S. 510 (1927), the U.S. Supreme Court held that a defendant is denied due process if the judge deciding the case has a "direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Id.* at 523. Based on that standard, the Court in *Tumey* held that a mayor who also served as a judge was not a neutral decisionmaker because fines that he imposed supplemented his salary and generated revenue for his town. *Id.* at 531-32. Similarly, in *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), the Court held that a mayor who also served as judge was not a neutral decisionmaker because fines and fees

---

[24] *See, e.g.*, Ga. Code Ann. § 42-8-102(f)(4)(A) (2021) (providing that for "failure to report to probation or failure to pay fines, statutory surcharges, or probation supervision fees, the court shall consider the use of alternatives to confinement, including community service"); Tex. Code Crim. Proc. Ann. 42.15 (West 2021) (When the court determines that "the defendant does not have sufficient resources or income to immediately pay all or part of the fine and costs" the court can determine whether the fine and costs should be "paid at some later date or in a specified portion at designated intervals; . . . discharged by performing community service . . . ; waived in full or in part . . . ."); *see also Tate*, 401 U.S. at 400 n.5 (discussing ineffectiveness of fine payment plans and citing examples from several states).

[25] *See* Fines and Fees Just. Ctr., *First Steps Toward More Equitable Fines and Fees Practices: Policy Guidance on Ability to Pay Assessments, Payment Plans and Community Service* (2020), https://perma.cc/W4BH-RJUX.

that he assessed accounted for a major portion of the village's revenue and he was personally and solely accountable to the village council for the village budget. *Id.* at 58, 60.

Due process also bars conflicts where an institutional financial interest in the outcome of a case gives rise to a significant personal interest for the judge, even when there is no prospect of personal financial gain. For example, in *Cain v. White*, 937 F.3d 446, 451 (5th Cir. 2019), the court held that parish judges were not neutral decisionmakers because they oversaw collection of fines and fees that funded a substantial portion of a judicial expense fund they administered and that supported the salaries of judicial staff and other court expenses. Similarly, in *Caliste v. Cantrell*, 937 F.3d 525, 531-32 (5th Cir. 2019), the court held that a judge violated the defendants' due process right to a neutral decisionmaker by both setting bail and administering a similar judicial expense fund financed in substantial part by fees assessed on commercial security bonds typically used by the defendants to make bail.[26]

Fines and fees collected by courts or other officials who enforce the law generally do not raise conflict-of-interest concerns, however, if those fines and fees are not paid directly to the officials in question. In *Dugan v. Ohio*, 277 U.S. 61, 65 (1928), the U.S. Supreme Court found permissible a mayor's participation on a judicial commission when the fines assessed by the commission were deposited into the same general fund from which the mayor's salary was paid, but where the mayor's salary was not dependent on a conviction in any specific commission matter. A key factor in the Court's analysis was the remoteness of the effect of any individual commission decision on the mayor's salary. *See also Mobility Workx, LLC v. Unified Pats., LLC*, 15 F.4th 1146, 1154 (Fed. Cir. 2021); *Del. Riverkeeper Network v. Fed. Energy Regul. Comm'n*, 895 F.3d 102, 112 (D.C. Cir. 2018).

As the Department has previously observed, "[c]ourts, prosecutors, and police should be driven by justice—not revenue." U.S. Statement of Interest (Doc. 56) at 1, *Coleman v. Town of Brookside*, No. 2:22-cv-00423-RDP (N.D. Ala. July 26, 2022). It may interfere with an official's neutrality, raising due process concerns, if the official's imposition of fines or fees affects the amount of his or her compensation. The cases cited above establish that the Fourteenth Amendment bars judges from deciding cases where their decision-making may be distorted by direct, personal, substantial pecuniary interests. The Department has taken the position that due process protections also apply when the disposition of fines creates a personal interest in the outcome of an enforcement proceeding for other officials who enforce the law, including police, prosecutors, and probation officers. *See id.* at 10-11; *see also Marshall*, 446 U.S. at 249-50 (holding that the due process neutrality requirement applies to enforcement agents). Several courts have applied the neutrality requirement to private probation companies, individual probation officers, law enforcement officials, and county attorneys.[27]

---

[26] *See also* Order Denying Mot. to Dismiss (Doc. 80) at 14-15, *Coleman v. Town of Brookside*, No. 2:22-cv-00423-AMM (N.D. Ala. Mar. 23, 2023) (explaining that both personal and institutional conflicts of interest may contravene the federal Constitution).

[27] *See Brucker v. City of Doraville*, 38 F.4th 876, 887-88 (11th Cir. 2020) (explaining that the Fourteenth Amendment's due process requirements for conflicts of interest apply to law enforcement officers and prosecutors); *Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1244 (11th Cir. 2020) (holding that a private probation company "was not impartial because its revenue depended directly and materially on whether and how it made sentencing decisions"); *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-00033, 2021 WL 366776, at *18-25 (M.D. Tenn. Feb. 3, 2021) (denying a motion to dismiss due process claim where the plaintiffs alleged that the contract between a county and private

11

5.    **The Fourteenth Amendment prohibits conditioning access to the judicial process on the payment of fees by individuals who are unable to pay.**

The Fourteenth Amendment prohibits conditioning access to the judicial process on the payment of fees such as court costs.[28] *See M.L.B. v. S.L.J.*, 519 U.S. 102, 119-24 (1996) (holding that Mississippi statutes that conditioned an indigent mother's right to appeal a judgment terminating her parental rights on prepayment of costs violated equal protection and due process); *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971) (holding that due process bars states from conditioning access to compulsory judicial process on the payment of court fees by those unable to pay); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (plurality opinion) ("There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance."); *see also Tucker v. City of Montgomery Bd. of Comm'rs*, 410 F. Supp. 494, 502 (M.D. Ala. 1976) (holding that the conditioning of an appeal on payment of a bond violates indigent prisoners' equal protection rights and "has no place in our heritage of Equal Justice Under Law" (quoting *Burns v. Ohio*, 360 U.S. 252, 258 (1959))).[29]

Fines and fees assessed by courts are often incorrectly framed as a routine administrative matter. For example, a motorist who is arrested for driving with a suspended license may be told that the penalty for the citation is $300 and that a court date will be scheduled only upon the payment of $300 (sometimes referred to as a prehearing "bond" or "bail" payment). Courts most commonly impose these payment requirements on defendants who have failed to appear, depriving those defendants of the opportunity to establish good cause for missing court. However, regardless of the charge, predicating indigent individuals' access to a hearing, to counsel, or other judicial process on the payment of costs can deprive those without financial resources of access to justice and potentially violate their rights.[30]

---

probation company provided that the company's sole compensation came from fines and fees it collected from probationers); *Flora v. Sw. Iowa Narcotics Enf't Task Force*, 292 F. Supp. 3d 875, 903-05 (S.D. Iowa 2018) (denying summary judgment on due process claim against a narcotics task force, law enforcement officers, and county attorneys whose departments were funded in part by assets seized for forfeiture); *Harjo v. City of Albuquerque*, 326 F. Supp. 3d 1145, 1195 (D.N.M. 2018) (finding "a realistic possibility that the forfeiture program prosecutors' judgment will be distorted, because in effect, the more revenues the prosecutor raises, the more money the forfeiture program can spend").

[28] Courts can, however, limit access to courts, including by requiring payment of fees, in many circumstances as a penalty for litigation conduct or to deter frivolous filings. *See, e.g., Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316-19 (3d Cir. 2001) (discussing Prison Litigation Reform Act's three-strikes rule); *Williams v. Adams*, 660 F.3d 263, 265-67 (7th Cir. 2011).

[29] The U.S. Supreme Court reaffirmed this principle in *Little v. Streater*, 452 U.S. 1, 16-17 (1981), when it prohibited conditioning indigent persons' access to blood tests in adversarial paternity actions on payment of a fee.

[30] Courts might also inappropriately impose fees that burden access to counsel. Depending on the jurisdiction, this can include fees for submitting an application for court-appointed counsel, fees for the court to process that application and appoint counsel, and fees for representation by the court-appointed counsel. As youth generally do not have financial resources independent from their parents or guardians, and cannot compel the adults to pay, predicating access to and services of counsel on payment of fees seriously risks youth being subjected to the unconstitutional denial of counsel. Nat'l Juv. Def. Ctr., *Access Denied: A National Snapshot of States' Failure to Protect Children's Right to Counsel* 22-23 (2017), https://perma.cc/85RZ-49T6; Fines and Fees Just. Ctr., *At What Cost? Findings from an Examination into the Imposition of Public Defense System Fees* (2022), https://perma.cc/6X33-YPD9.

12

6.    **The Sixth and Fourteenth Amendments require due process protections, such as access to counsel in appropriate cases, as well as notice, when imposing and enforcing fines and fees.**

Defendants may have the right to be represented by counsel in certain fines and fees enforcement cases. Failing to appear or to pay outstanding fines or fees can result in incarceration, whether through criminal charges or criminal contempt, a suspended sentence, or civil contempt proceedings. The Sixth Amendment requires that a defendant be provided the right to counsel in at least any criminal proceeding that may result in incarceration, *Scott v. Illinois*, 440 U.S. 367, 373 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), and it forbids imposition of a suspended jail sentence on a probationer who was not afforded a right to counsel when originally convicted and sentenced, *Alabama v. Shelton*, 535 U.S. 654, 662 (2002). Under the Fourteenth Amendment, defendants likewise may be entitled to counsel in civil contempt proceedings for failure to pay fines or fees where incarceration is a possible penalty. *See Turner*, 564 U.S. at 446-48 (holding that, although there is no automatic right to counsel in civil contempt proceedings for nonpayment of child support, due process is violated when neither counsel nor adequate alternative procedural safeguards are provided to prevent incarceration for inability to pay).[31] The Fourteenth Amendment's Due Process Clause also guarantees youth the right to counsel in juvenile proceedings, irrespective of any affirmative request. *In re Gault*, 387 U.S. 1, 38-41 (1967). Where a right to counsel exists, that right cannot be conditioned on a defendant's payment of fines or fees that the defendant lacks the ability to pay. *Fuller v. Oregon*, 417 U.S. 40, 52-53 (1974).

Further, a cornerstone of the Fourteenth Amendment's Due Process Clause is constitutionally adequate notice. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950). As the Court noted in *Mullane*, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. This core constitutional principle has been applied in cases involving minor offenses. *See, e.g., Remm v. Landrieu*, 418 F. Supp. 542, 548 (E.D. La. 1976) (finding city towing ordinance unconstitutional "insofar as it authorizes the assessment of towing fees and storage charges without notice and the opportunity for a hearing").[32]

As a best practice, courts should ensure that individuals are provided with access to counsel in appropriate cases involving fines and fees, including, as discussed above, in proceedings that may result in incarceration and in juvenile proceedings. We recommend that courts undertake measures to ensure that individuals actually receive the citations and summonses intended for them, and adequately inform individuals of the precise charges against them, the amount they owe or other possible penalties, the date of their court hearing, the availability of alternate means of

---

[31] The Supreme Court's ruling in *Turner* that the right to counsel is not automatic was limited to contempt proceedings arising from failure to pay child support to a custodial parent who is unrepresented by counsel. *See* 564 U.S. at 446-48. The Court explained that recognizing such an automatic right in that context "could create an asymmetry of representation." *Id.* at 447. The Court distinguished those circumstances from civil contempt proceedings to recover funds due to the government, which "more closely resemble debt-collection proceedings" in which "[t]he government is likely to have counsel or some other competent representative." *Id.* at 449.

[32] *But see Goichman v. City of Aspen*, 859 F.2d 1466, 1468-69 (10th Cir. 1988) (holding that no additional hearing beyond one to adjudicate underlying parking violation was required by due process to determine validity of local towing and impoundment procedures).

13

payment, the rules and procedures of court, their rights as a litigant, and whether they must appear in person. Gaps in this vital information can make it difficult, if not impossible, for individuals to fairly and expeditiously resolve their cases. Inadequate notice can have a cascading effect, resulting in the individual's failure to appear and leading to the imposition of significant penalties in possible violation of an individual's due process rights.

### 7.    The Fourteenth Amendment prohibits the imposition of fines and fees in a manner that intentionally discriminates against a protected class.

The Fourteenth Amendment's Equal Protection Clause prohibits state action that results in a discriminatory effect against a protected class when that state action is motivated, in whole or part, by a discriminatory purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-67 (1977); *Washington v. Davis*, 426 U.S. 229, 239-40 (1976). Importantly, a consistent pattern of racial disparities can, itself, serve as evidence of discriminatory purpose. *See Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 487 (1997) ("[T]he impact of an official action is often probative of why the action was taken in the first place."). Thus, efforts to collect fines and fees that have a discriminatory effect on members of a particular race—yielding, for example, racially disproportionate stops and citations—may constitute evidence that, in combination with other evidence, could support a finding of intentional discrimination. *See, e.g.*, C.R. Div., U.S. Dep't of Just., *Investigation of the Ferguson Police Department* (Mar. 4, 2015), https://perma.cc/7QR3-BRLD (finding that Ferguson's failure to evaluate or correct its approach to raising revenue through fines and fees despite its disproportionate impact on Black residents constituted evidence of intentional discrimination in violation of the Fourteenth Amendment); *see also Nguyen v. La. State Bd. of Cosmetology*, 236 F. Supp. 3d 947, 953-56 (M.D. La. 2017) (denying defendants summary judgment on equal protection claims alleging fines imposed on nail salons discriminated on the basis of race). *Cf. Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("'Discriminatory purpose' . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." (citation omitted)).

Even in the absence of intentional discrimination, we recommend that courts and other state actors carefully consider whether their collection of fines and fees have disproportionate effects based on race or another protected characteristic. For example, courts should consider whether certain fines and fees practices, such as debt-based driver's license suspensions, disproportionately affect people of color.[33] Effective alternatives to these practices may better ensure that states and

---

[33] *See, e.g.*, C.R. Corps, *The Fiscal Impact of Debt-Based Driver's License Suspensions* (2021), https://perma.cc/M8DL-DW6X (summarizing research in numerous states and concluding that debt-based driver's license suspension is ineffective and counterproductive to debt collection); Stephanie Seguino et al., *Trends in Racial Disparities in Vermont Traffic Stops, 2014-19*, at 2-3 (Jan. 2021), https://perma.cc/FL4V-RC4Q; Emma Pierson et al., *A large-scale analysis of racial disparities in police stops across the United States*, 4 Nature Human Behaviour 736 (2020), https://perma.cc/4W29-V7RN; N.Y. Law Sch. Racial Just. Project, *Driving While Black and Latinx: Stops, Fines, Fees, and Unjust Debts* 9 (Feb. 2020), https://perma.cc/HZ9Y-WBBH; Am. Bar Ass'n, *Unpaid Court Fees and Fines: License Suspensions Can't Be the Answer* (Jul. 27, 2020), https://perma.cc/BH9A-GDX4 (concluding that debt-based license suspensions are counterproductive because they often render individuals unable to work and place individuals at risk of incurring additional fines and fees that they cannot pay if they drive while their license is suspended); The Sent'g Project, *Report to the United Nations on Racial Disparities in the U.S. Criminal Justice System* (Apr. 19, 2018), https://perma.cc/97LF-HV2U; Findings, Stanford Open Policing Project, https://perma.cc/W839-7NBD; *see also* William E. Crozier & Brandon L. Garrett, *Driven to Failure: An Empirical Analysis of Driver's License Suspension in North Carolina*, 69 Duke L.J. 1585, 1606 (2020), https://perma.cc/V4SD-DKYM.

14

localities do not inequitably burden members of protected classes.[34]

\* \* \* \* \*

The Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601 (Section 12601), makes it unlawful for law enforcement officers to engage in a pattern or practice of conduct that violates the U.S. Constitution or federal law, including, under certain circumstances, the unconstitutional or unlawful imposition and enforcement of fines and fees. Accordingly, failure by jurisdictions to comply with the constitutional and legal requirements described in this letter might expose them to civil enforcement actions by the Department. For example, under its Section 12601 authority, the Department entered into a consent decree with the City of Ferguson, Missouri, that required the City to rectify its allegedly unconstitutional fines and fees practices by, among other things: (1) considering ability to pay in assessing and enforcing fines and fees; and (2) implementing an amnesty program for individuals previously subjected to unconstitutional fines and fees practices.[35]

With respect to youth in particular, the Department has utilized its Section 12601 authority to enforce the rights of those involved in the juvenile justice system through a comprehensive settlement with Shelby County, Tennessee,[36] following the Department's findings of serious and systemic failures in the juvenile court that violated the due process and equal protection rights of system-involved youth.[37] Similarly, the Department has enforced the rights of minors in St. Louis County Family Court after finding systemic violations of their rights under the Due Process and Equal Protection Clauses.[38]

We also note that the courts' obligation to comply with these principles extends to activities carried out by court staff and private contractors on the courts' behalf. In many courts, especially those adjudicating strictly minor or local offenses, the judge or magistrate may preside for only a few hours or days per week, while most court business is conducted by clerks or probation officers (including private contractors) outside of court sessions. As a result, clerks and other court staff are sometimes tasked with conducting indigency inquiries, determining bond amounts, issuing arrest warrants, and other critical functions—often with only perfunctory review by a judicial officer or no review at all. Without adequate judicial oversight, there is no reliable means of ensuring that these tasks are performed consistent with due process and equal protection requirements. Regardless of the size of the docket or the limited hours of the court, judges must ensure that the law is followed by all staff and private contractors to preserve "both the appearance and reality of

---

[34] For example, the Policy Advocacy Clinic at the School of Law at the University of California at Berkeley analyzed data on the allocation of fines and fees on juveniles in Alameda County, California, and found that Black youth were overrepresented at each step in the juvenile justice system, exposing them to significantly higher fees. Jeffrey Selbin & Stephanie Campos, *High Pain, No Gain: How Juvenile Administrative Fees Harm Low-Income Families in Alameda County, California* (Mar. 2016), https://perma.cc/RBP4-Z8ZF. Other research has shown that having unpaid monetary sanctions after case closing led to higher recidivism, and that youth of color were more likely to have unpaid monetary sanctions than their white peers. Piquero & Jennings, *supra* note 11, using a sample of over 1,000 youth.

[35] Consent Decree (Doc. 41) at 79-80, 83-84, *United States v. City of Ferguson*, No. 4:16-cv-180 (E.D. Mo. Apr. 19, 2016).

[36] Mem. of Agreement Regarding the Juv. Ct. of Memphis & Shelby Cnty., *supra* note 19.

[37] C.R. Div., U.S. Dep't of Just., Investigation of the Shelby Cnty. Juv. Ct. (Apr. 26, 2012), https://perma.cc/ZQ46-Y3XQ.

[38] C.R. Div., U.S. Dep't of Just., Mem. of Agreement Between the U.S, Dep't of Just. and the St. Louis Cnty. Fam. Ct. (Dec. 14, 2016), https://perma.cc/ZCN6-JTKA.

15

fairness, generating the feeling, so important to a popular government, that justice has been done." *Marshall*, 446 U.S. at 242 (citation and internal quotation marks omitted); *see also* Model Code of Judicial Conduct, Canon 2, Rules 2.2, 2.5, 2.12 (Am. Bar Ass'n 2020).

**B.    Obligations Under Title VI of the Civil Rights Act of 1964 and the Omnibus Crime Control and Safe Streets Act of 1968**

Recipients of federal financial assistance, including court systems, must also comply with statutory prohibitions against discrimination in the imposition of fines and fees.[39] In particular, courts must be cognizant of their obligations under Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. § 2000d *et seq.*, and its implementing regulations, 28 C.F.R. § 42.101 *et seq.*, as well as under the Omnibus Crime Control and Safe Streets Act of 1968 (Safe Streets Act), 34 U.S.C. § 10228(c)(1) (nondiscrimination provision); 28 C.F.R. pt. 42, subpt. D.[40] Title VI and its implementing regulations prohibit race, color, and national origin discrimination in the delivery of services or benefits by recipients of federal financial assistance.[41] Recipients of funds covered by the Safe Streets Act, which is modeled on Title VI, must not discriminate based on race, color, national origin, religion, or sex.[42]

For example, Title VI and the Safe Streets Act prohibit discrimination based on national origin, such that state court systems and other federal funding recipients are required to take reasonable steps to provide meaningful access to individuals who are limited English proficient (LEP), including youth and their families, in their programs or activities.[43] *See* U.S. Dep't of Just.,

---

[39] For example, Title II of the Americans with Disabilities Act (ADA) and its implementing regulations prohibit state and local government entities, including court systems, from discriminating based on disability in their programs, services, and activities. 42 U.S.C. § 12132; 28 C.F.R. pt. 35. Among other things, covered entities must provide people with disabilities an equal opportunity to participate in or benefit from an aid, benefit, or service, and must make reasonable modifications to avoid discrimination based on disability unless the covered entity can demonstrate that making such modifications would fundamentally alter the nature of its service, program, or activity. 28 C.F.R. § 35.130(b)(1), (b)(7). Covered entities must also take appropriate steps to ensure that communications with people with disabilities are as effective as communications with others. 28 C.F.R. § 35.160(a)(1). Similarly, Section 504 of the Rehabilitation Act prohibits recipients of federal financial assistance from discriminating solely by reason of disability in their programs and activities. 29 U.S.C. § 794.

[40] Unlike Title VI, which generally applies to all recipients of federal financial assistance, the nondiscrimination provision of the Safe Streets Act only applies to recipients of certain federal financial assistance from the Department. Recipients of financial assistance from the Department should also be aware of their obligations to comply with the nondiscrimination provisions in certain Department program statutes. This includes (1) the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, and its implementing regulations, 34 U.S.C. § 11182(b), 28 C.F.R. pts. 31 & 42; (2) the Victims of Crime Act of 1984, as amended, and its implementing regulations, 34 U.S.C. § 20110(e), 28 C.F.R. § 94.114; and (3) the Violence Against Women Act of 1994, as amended 34 U.S.C. § 12291(b)(13).

[41] *See generally* C.R. Div., U.S. Dep't of Just., *Title VI Legal Manual*, https://perma.cc/XNC5-2HLL (hereinafter *Title VI Legal Manual*). In addition to prohibiting intentional discrimination, Title VI and the nondiscrimination provisions of the Safe Streets Act also bar recipients of federal financial assistance, including court systems, from implementing otherwise neutral policies and practices that, although not adopted with the intent to discriminate, nonetheless have an unjustified effect of discriminating against individuals on the basis of race, color, or national origin. The legal framework for this type of discriminatory effects claim under Title VI and the Safe Streets Act is akin to the burden-shifting analysis of an employment discrimination claim under Title VII of the Civil Rights Act of 1964. *See, e.g., N.Y. Urb. League, Inc. v. New York*, 71 F.3d 1031, 1036 (2d Cir. 1995) (per curiam). *See* 28 C.F.R. § 42.104(b)(2); *Title VI Legal Manual*, at sec. VII.

[42] 28 C.F.R. § 42.203(e).

[43] *See, e.g., Lau v. Nichols*, 414 U.S. 563, 568-69 (1974).

Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41455 (June 18, 2002) (hereinafter "DOJ LEP Guidance"); *see also* C.R. Div., U.S. Dep't of Just., "Communication with Courts Regarding Language Access" (Aug. 2008, republished 2018).[44]

In order to meet their statutory obligations, courts must, for instance, provide appropriate language assistance services to LEP individuals in connection with assessment and collection of fines and fees. Such assistance includes, but is not limited to, ensuring that court users with LEP have competent interpreting and translation services during all related hearings, trials, and motions, *see* DOJ LEP Guidance, 67 Fed. Reg. at 41471, provided at no cost. Meaningful language assistance is crucial, both within and beyond the fines and fees context.[45]

Title VI and the Safe Streets Act require recipients of federal funds, as a condition of receiving financial assistance, to contractually agree that they will comply with federal civil rights statutes.[46] Court systems receiving federal financial assistance that do not comply with Title VI or Safe Streets Act requirements might be subject to civil enforcement actions by the Department.[47] The Department has the authority to review and investigate recipients of its federal financial assistance.[48] The Department expects its funding recipients, including courts, to cooperate with investigations and, upon request, to provide records[49] that will enable the Department to ascertain

---

[44] U.S. Dep't of Just., *Communication with Courts Regarding Language Access*, https://perma.cc/5XN3-SNJE. Failure to provide meaningful language access in criminal proceedings also implicates constitutional rights. *See, e.g., United States v. Cirrincione*, 780 F.2d 620, 634 (7th Cir. 1985) ("We hold that a defendant in a criminal proceeding is denied due process when: (1) what is told him is incomprehensible; (2) the accuracy and scope of a translation at a hearing or trial is subject to grave doubt; (3) the nature of the proceeding is not explained to him in a manner designed to insure his full comprehension; or (4) a credible claim of incapacity to understand due to language difficulty is made and the district court fails to review the evidence and make appropriate findings of fact."). Several circuits have held that a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter. *United States ex rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir. 1970); *see also United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) ("While these cases have often been concerned with the role of interpreters in helping a defendant to understand those who testify against him, and hence have focused on the Sixth Amendment right to confront witnesses, the withdrawal of an interpreter whose assistance has been enlisted in order that the defendant may deliver his own testimony clearly implicates the defendant's Fifth Amendment right to testify on his own behalf."); *United States v. Martinez*, 616 F.2d 185, 188 (5th Cir. 1980) (per curiam); *United States v. Carrion*, 488 F.2d 12, 14 (1st Cir. 1973) (per curiam); *Ling v. State*, 702 S.E.2d 881, 884 (Ga. 2010).

[45] The Department has worked with state courts across the country to improve their language access services. *See* U.S. Dep't of Just., *State Courts*, https://perma.cc/747D-TUA7 (last visited Apr. 18, 2023).

[46] *See* 28 C.F.R. § 42.105 (describing assurances required of federal financial assistance recipients). The Department has the right to access pertinent records, personnel, and other information from its funding recipients. *See, e.g.,* Department of Justice Certified Standard Assurances ¶¶ 4, 7, https://perma.cc/GMS3-BR5Z; 34 U.S.C. § 10230; 28 C.F.R. § 42.106; 2 C.F.R. § 200.337(a); 28 C.F.R. § 42.105(a)(1) (requiring that every application for federal financial assistance from the Department include an assurance that the program will be conducted in compliance with all of the requirements of Title VI, as a condition of its approval).

[47] 28 C.F.R. § 42.101 *et seq.* (Title VI); 28 C.F.R. pt. 42, subpt. D (Safe Streets Act).

[48] Other federal agencies that administer federal financial assistance can also make referrals to the Department for administrative investigation and judicial enforcement regarding their programs or activities. *See, e.g.,* 28 C.F.R. § 50.3.

[49] *See* 28 C.F.R. § 42.106(b) ("Each recipient shall keep such records and submit to the responsible Department official or his designee timely, complete, and accurate compliance reports at such times, and in such form and containing such information, as the responsible Department official or his designee may determine to be necessary to enable him to ascertain whether the recipient has complied or is complying with [the Title VI regulations]."). The Department's Safe Streets Act nondiscrimination regulations contain substantially similar recipient requirements. *See* 28 C.F.R.

17

whether the administration of fines and fees complies with Title VI and Safe Streets Act requirements.[50] If the Department finds that one of its funding recipients has violated federal law and has failed to voluntarily resolve those violations, the Department may suspend or terminate, or refuse to grant or continue, federal financial assistance.[51] The Department may also use civil litigation to enforce Title VI and the nondiscrimination provisions of the Safe Streets Act. Additionally, the Department may independently initiate compliance reviews (i.e., investigative audits) into its funding recipients to determine whether their administration of fines and fees violates applicable federal civil rights laws.[52]

In addition to the possibility of enforcement actions, the Department has specific resources available to courts, including juvenile courts and justice agencies, to help them comply with their civil rights obligations.[53]

## C.   **Conclusion**

Eliminating the unjust imposition of fines and fees is one of the most expeditious ways for jurisdictions to support the success of youth and low-income individuals, honor constitutional and statutory obligations, reduce racial disparities in the administration of justice, and ensure greater justice for all. We invite you to work with the Department to continue to develop and share solutions. The Department's Civil Rights Division is charged with protecting the civil and constitutional rights of all persons in the United States, and is available to provide technical assistance to courts, other recipients of federal financial assistance, and stakeholders, as appropriate. The Department's reinvigorated Office for Access to Justice (ATJ) works to mitigate economic barriers that prevent access to the promises and protections of our legal systems. ATJ will follow up on this letter by building a best practices guide, highlighting innovative work by states, municipalities, and court leaders in this area. ATJ welcomes the opportunity to serve as a

---

§ 42.207(a) (requiring recipients to "[p]ermit reasonable access" to "books, documents, papers, and records, to the extent necessary to determine whether the recipient is [in compliance]").

[50] Recordkeeping can help recipients identify potential disparities in the imposition of fines and fees and alert them to potential violations of federal nondiscrimination laws. Courts that receive federal funding should collect and analyze demographic data related to the imposition of fines and fees to ensure compliance with federal law. Such procedures are critical for evaluating the impact that fines and fees may have on a protected class over time.

[51] If a recipient has failed to comply with Title VI, and cannot correct this violation voluntarily, the Department "may suspend or terminate, or refuse to grant or continue, Federal financial assistance." 28 C.F.R. § 42.108(a), (b). The Department might also "use any other means authorized by law[] to induce compliance." *Id.* This might include enforcement proceedings under applicable federal, state, or local law. *Id.* Similarly, if the Department finds Safe Streets Act non-compliance, there is an administrative process by which the Department might suspend funding, as appropriate, to the specific program or activity in which the noncompliance was found. 28 C.F.R. § 42.210(a); *see also* 28 C.F.R. § 42.210(b) (providing for hearing procedures in the event of noncompliance).

[52] 28 C.F.R. § 42.206. For example, the Department's Office of Justice Programs, Office for Civil Rights examined whether Sacramento County, California and the Sacramento Superior Court discriminated on the basis of race, national origin, or age when assessing and collecting costs, fees, and fines against youth involved in the juvenile justice system. *See* Letter from the Office for Civil Rights to Judge Culhane and Supervisor Nottoli, Compliance Rev. of Sacramento Cnty., Cal. and the Sacramento Superior Ct. (16-OCR-2156) (May 15, 2017), https://perma.cc/29CY-Q3XB. In response, the Sacramento County Board of Supervisors directed that the assessment and collection of fines and fees from youth should cease, including fees associated with juvenile detention, supervision, drug testing, electronic monitoring, and representation in delinquency proceedings. The Board also directed the County to forgive over 23 million dollars of existing debt related to the juvenile justice system.

[53] The Civil Rights Division has created a webpage that highlights a number of resources designed to assist state courts in providing meaningful language access. *See State Courts, supra* note 45.

resource, and to collaborate and promote solutions. The Department's Office of Justice Programs (OJP)[54] provides grant funding and technical assistance to state, county, local, and tribal courts, which improves the functioning and fairness of the justice system, including by moving away from an overreliance on fines and fees to support government programs. In the spring of 2023, OJP's Bureau of Justice Assistance (BJA) plans to release a solicitation entitled "The Price of Justice: Rethinking Fines and Fees," which will seek a training and technical assistance provider to support jurisdictions seeking to examine, revise, and implement changes to policies and practices around both fines and fees. The goal of the solicitation is to support jurisdictions in implementing innovative approaches to address the common barriers to equitable systems of legal financial obligations.[55] We encourage you to visit OJP's website for a listing of available solicitations and opportunities from the OJP program offices.[56] BJA has a National Training and Technical Assistance Center that provides no-cost, on-demand training and technical assistance that may prove useful in thinking about new ways to address the needs of courts and the people they serve.[57]

The Department of Justice has a strong interest in ensuring that state and local courts provide everyone with the basic protections guaranteed by the U.S. Constitution, Title VI, the Safe Streets Act, and other federal laws, regardless of financial means. We are eager to build on the many reforms that jurisdictions have implemented over the past few years, and we look forward to working collaboratively to ensure that everyone receives equal, fair, and impartial access to justice.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

Amy L. Solomon
Principal Deputy Assistant
Attorney General
Office of Justice Programs

Rachel Rossi
Director
Office for Access to Justice

---

[54] The Office of Justice Programs provides federal leadership, grants, training, technical assistance and other resources to improve the nation's capacity to prevent and reduce crime, advance racial equity in the administration of justice, assist victims and enhance the rule of law. For more information about OJP and its program offices, funding opportunities, and other resources, see www.ojp.gov.

[55] For guidance in preparing and submitting applications for OJP funding, please visit OJP's Grant Application Resource Guide, which contains details about application reviews and federal award administration: Off. of Just. Programs, U.S. Dep't of Just., *OJP Grant Application Resource Guide*, https://perma.cc/K7LQ-WXB8 (last visited Apr. 18, 2023).

[56] Off. of Just. Programs, U.S. Dep't of Just., *Opportunities & Awards: Current Funding Opportunities*, https://www.ojp.gov/funding/explore/current-funding-opportunities (last visited Apr. 18, 2023).

[57] Nat'l Training and Tech. Assistance Ctr., Bureau of Just. Assistance, U.S. Dep't of Just., *Request TTA*, https://bjatta.bja.ojp.gov/working-with-nttac/requestors (last visited Apr. 18, 2023).



SECURITY

FEB 1 2 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

BRANDON ADAMS
2701 N RAINBOW BLVD
# 2095
LAS VEGAS NV 89108

$3.43        US POSTAGE
FIRST — CLASS IMI
Feb 06 2025
Mailed from ZIP 89108
8 OZ FIRST — CLASS MAIL FLATS RATE
ZONE 7

10582122

063S0010282497

U.S. District Court Northern District of Alabam
Greer M. Lynch Clerk of Court
1729 5TH AVE N
BIRMINGHAM AL 35203 — 2022

Shipped using PostalMate®
Pkg:76347